UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LARRY ROWE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-02673-SEB-DML |
| | ) |
| DUSHAN ZATECKY, et al. | ) |
| | ) |
| Defendants. | ) |

**Entry Granting Defendants' Motions for Summary Judgment and
Directing Entry of Final Judgment**

Plaintiff Larry Rowe brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs following injuries he sustained as result of a ceiling dorm collapse. Presently pending before the Court are the defendants' motions for summary judgment. For the reasons explained in this Entry, the defendants' motions for summary judgment, dkts. [65, 71], are **granted**.

**I.
Summary Judgment Standard**

A motion for summary judgment asks the Court to determine if a trial is necessary when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When a party asserts that a fact is undisputed or genuinely disputed, the party must support that assertion by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also attempt to show that the materials relied upon by an opposing party do not establish the absence or presence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made based on personal knowledge,

setting out facts that would be admissible in evidence, and showing that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a particular fact can result in a contrary assertion being considered undisputed, potentially warranting a grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 572-73 (7th

Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II.
## Factual Background

The facts supported by admissible evidence and viewed in the light most favorable to the non-moving party in the case before us here establish the following: On October 9, 2017, when Mr. Rowe was incarcerated at the Pendleton Correctional Facility ("Pendleton"). a large amount of plaster fell from the ceiling of Mr. Rowe's housing dorm, hitting Mr. Rowe on his head, shoulder and right knee (the "Incident"). Dkt. 67-2 at 7. Mr. Rowe claims that healthcare employees of Wexford of Indiana, LLC ("Wexford") were deliberately indifferent in denying him proper medical treatment with respect to the injuries he sustained from what we refer to hereafter as the Incident. *Id.* at 11.

### A. Dr. Paul Talbot and Wexford

Dr. Talbot is a physician licensed to practice medicine in the State of Indiana and currently employed as a physician by Wexford at Pendleton. Dkt. 67-1 at 1. In this position, Dr. Talbot had on various occasions examined and treated Mr. Rowe. *Id*. Mr. Rowe's medical history includes diagnoses and treatments of hepatitis, hypertension, esophageal reflux disease, and right knee pain. *Id*. Mr. Rowe has reported a history of at least five prior surgeries to his right knee, including two ACL reconstruction surgeries, and X-ray images of his right knee through 2017 showed signs of prior surgical repair and some mild degenerative joint disease. *Id*. Mr. Rowe often reported pain in his right knee for which he was prescribed pain medications. *Id.* at 1-2. In addition to the prescribed pain medication, he had received physical therapy and a knee brace to treat his knee complaints. *Id.* at 1-3, 7.

Following the Incident, Mr. Rowe was escorted promptly to the health care unit where he was examined by Nurse Kim Simpson. *Id*. at 3. Dr. Talbot also examined Mr. Rowe and noted a two-inch superficial scratch but it was not bleeding. *Id*. During the examination, Mr. Rowe also complained of pain to his right knee. *Id*. Mr. Rowe was advised to use ice and heat on his knee, and was given Tylenol for pain. *Id*. Dr. Talbot did not find that Mr. Rowe suffered any serious or significant injury as a result of the Incident. *Id*. at 7.

Dr. Talbot again saw Mr. Rowe eight days later, noting that Mr. Rowe had in the interim period continued to work in carpentry and roofing, performing strenuous labor which would not be indicative of a patient with a serious or significant knee abnormality or injury. *Id*. at 3. Dr. Talbot discussed with Mr. Rowe a recommendation of activity restriction for six weeks to allow any potential weakness to heal before moving forward with other testing, but Mr. Rowe refused any course of treatment that would place restrictions on his physical activity. *Id*. Dr. Talbot noted no physical or functional limitations and continued to prescribe of Excedrin Migraine, Mobic and Neurontin for Mr. Rowe's pain. *Id*. at 4.

On December 14, 2017, Mr. Rowe was seen by Dr. Talbot following a health care request for an MRI that Mr. Rowe had submitted. *Id*. During the appointment, Mr. Rowe told Dr. Talbot that he had undergone six weeks of activity restriction and wanted to have an MRI. *Id*. at 5. Dr. Talbot advised Mr. Rowe to complete six additional weeks of physical activity, after which they could again discuss his condition. *Id*.

On April 26, 2018, Mr. Rowe was administered an MRI of his right knee which revealed ACL post-operative changes as well as the diminished size of the meniscus that might be secondary to a tearing or prior injury. The MRI also revealed a non-displaced horizontal tear of the lateral meniscus and degeneration of the PCL. *Id*. On that same day, Dr. Talbot followed up in a

4

conference with Mr. Rowe during which he noted that these findings were consistent with his prior significant surgical history. *Id*. Dr. Talbot again noted that Mr. Rowe was continuing to work as a carpenter with no apparent functional limitations, and recommended that Mr. Rowe undertake a weight loss program. He also prescribed Cymbalta as an additional pain medication to address Mr. Rowe's continuing knee complaints. *Id*. Dr. Talbot did not consider the abnormalities of the MRI significantly in light of Mr. Rowe's functional ability and his surgical history. *Id*. Dr. Talbot continued to prescribe pain medication to Mr. Rowe, and Mr. Rowe continued to work throughout this period.

### B. *Monica Gipson*

Ms. Gipson is employed by the IDOC Central Office as the Executive Director of Physical Health Services. Dkt. 73-1 at 1. On the date of the Incident, Ms. Gipson was employed in that position but as Director of Medical and Clinical Services. *Id*. Ms. Gipson has never been employed by Wexford and has never worked at Pendleton. *Id*.

Ms. Gipson has never met, seen, or treated Rowe for any medical conditions *Id*. at 2. Ms. Gipson did not receive or review any grievance appeals from Rowe for the time period relevant to his claims nor was she ever responsible for reviewing and responding to grievance appeals at the time that Mr. Rowe would have filed one pertaining to the Incident. *Id*.

### III.
### Discussion

This lawsuit has been brought pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "[T]he first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

At all times relevant to Mr. Rowe's claim, he was a convicted and imprisoned offender. Accordingly, his treatment and the conditions of his confinement must be evaluated under standards established by the Eighth Amendment's proscription against cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). Pursuant to the Eighth Amendment, prison officials have a duty to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). Deliberate indifference in this context is "something akin to recklessness." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

Each of the defendants has filed for summary judgment on Mr. Rowe's deliberate indifference claims.  Dkts. [65, 71]. The Court address their arguments below.

**A.  Ms. Gipson**

Ms. Gipson is entitled to summary judgment because the undisputed evidence shows that she had no personal responsibility for or involvement with Mr. Rowe's medical treatment. "Individual liability under § 1983… requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago,* 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional

6

deprivation.... A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")).

At all times relevant to Mr. Rowe's suit, Ms. Gipson was employed by the IDOC Central Office as the Director of Medical and Clinical Services. Dkt. 73-1 at 3. Mr. Rowe conceded in his deposition that he had never met, seen, or been treated by Ms. Gipson for any medical condition. He had intended to sue the treating nurse employed by Wexford, and brought this action against Ms. Gipson under the mistaken belief that she was that nurse. Dkt. 73-1 at 2; dkt. 73-2 at 11.

Because the undisputed evidence shows that Ms. Gipson had no personal involvement in Mr. Rowe's medical care, she cannot be liable for any alleged constitutional deprivation. *Colbert*, 851 F.3d at 657. Accordingly, the Court **grants** Ms. Gipson's motion for summary judgment, dkt. [65].

### B. Wexford

The undisputed facts show that Wexford is also entitled to summary judgment because Mr. Rowe has failed to frame a valid theory of liability against Wexford. Because Wexford acts under color of state law by contracting to perform a government function, *i.e.*, providing medical care to correctional facilities, it is treated as a government entity for purposes of Section 1983 claims. *See Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 fn.6 (7th Cir. 2002); *but see Shields v. Illinois Department of Correction*, 746 F.3d 782, 790 (7th Cir. 2014) (finding "substantial grounds to question the extension of the *Monell* holding for municipalities to private corporations"). Defendants, including private corporations, cannot be held vicariously liable under 42 U.S.C.§ 1983 for the alleged misdeeds of their employees. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001).

Therefore, to prevail on a deliberate indifference claim against Wexford, Mr. Rowe would have show that he suffered a constitutional deprivation as the result of an express policy or custom of Wexford itself.

Here, Mr. Rowe admitted during his deposition that he is suing Wexford solely because Wexford is Dr. Talbot's employer, not based on any express policy or custom of Wexford. Dkt. 67-2 at 5. In his response brief, Mr. Rowe asserts, for the first time, that Wexford has a policy to deny care "to minimize costs." *See* dkt. 82 at 8-9. However, these assertions contradict his deposition testimony, *see* dkt. 67-2 at 5, and are unsupported by any admissible evidence. *See* Fed. R. Civ. P. 56(e); Local Rule 56-1(e) and (h). Wexford is thus entitled to judgment as a matter of law. *Colbert*, 851 F.3d at 657.

### C. Dr. Talbot

The Court finds that summary judgment in favor of Dr. Talbot is also appropriate based on the undisputed evidence establishing that he did not display deliberate indifference in his medical treatment of Mr. Rowe. In evaluating the conduct of a medical practitioner, deliberate indifference exists when a "treatment decision . . . is 'so far afield of accepted professional standards' that a jury could find it was not the product of medical judgment." *Cesal v. Moats*, 851 F.3d 714, 724 (7th Cir. 2017) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)). The Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). However, if a plaintiff is able to "establish a departure from minimally competent medical judgment where a prison official persists in a court of treatment known to be ineffective." *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016), a finding of deliberate indifference may follow. And "[i]f a prison doctor chooses

an easier and less efficacious treatment without exercising professional judgment, such a decision can also constitute deliberate indifference." *Id.* (internal citations and quotations omitted).

Here, the undisputed evidence shows that Dr. Talbot's medical treatment of Mr. Rowe did not constitute deliberate indifference. In his response brief, Mr. Rowe argues that Dr. Talbot "persisted in a course of treatment that was ineffective rather than surgery[.]" Dkt. 82 at 8. However, the record establishes that throughout Mr. Rowe's history of knee pain, Dr. Talbot had ordered multiple courses of care and treatment, including pain medications, activity restrictions, and an MRI. *See* dkt. 67-1 at 1-6. Mr. Rowe is not entitled to receive any specific course of treatment and cannot prevail on a deliberate indifference claim solely because he disagrees with Dr. Talbot's medical judgment in this instance that he was not a candidate for surgery. *See Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) ("[A]n inmate is not entitled to demand specific care"); *see also Cesal*, 851 F.3d at 722 ("[M]ere disagreement with a doctor's medical judgment is not enough to support an Eighth Amendment violation.").

The undisputed evidence reveals that Dr. Talbot's medical opinion that Mr. Rowe was not a good candidate for knee surgery was based on Dr. Talbot's medical expertise and judgment, that is, based on Mr. Rowe's significant history of prior knee surgeries, his overall medical condition and history, his current high level of physical activity, and the risks associated with an additional surgery regarding Mr. Rowe's ability to continue functioning physically at such a high level (*See* dkt. 67-1 at 6-7) we hold that no reasonable juror could find that Dr. Talbot's treatment of Mr. Rowe "was not the product of medical judgment." *Cesal*, 851 F.3d at 724; *see also Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016) ("By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment."). Thus, no reasonable jury could

find that Dr. Talbot was deliberately indifferent to Mr. Rowe's serious medical needs, entitling him to summary judgment as a matter of law.

## IV.
## Conclusion

For the reasons stated above, the defendants' motions for summary judgments, dkts. [65, 71], are all **granted**. Final judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 9/30/2020

*[signature]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

LARRY ROWE
217518
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Bryan Findley
INDIANA ATTORNEY GENERAL
bryan.findley@atg.in.gov

Lyubov Gore
INDIANA ATTORNEY GENERAL
lyubov.gore@atg.in.gov

Nathan Aaron Pagryzinski
BLEEKE DILLON CRANDALL, P.C.
nathan@bleekedilloncrandall.com

Andrew Scheil
INDIANA ATTORNEY GENERAL
Andrew.Scheil@atg.in.gov

Ilene M. Smith
CHRISTOPHER C. MEYERS & ASSOCIATES
ismith@myers-law.com

Jordan Michael Stover
INDIANA ATTORNEY GENERAL
jordan.stover@atg.in.gov

Margo Tucker
INDIANA ATTORNEY GENERAL
margo.tucker@atg.in.gov